UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **HARRY BROADUS**, | ) | Case No. 1:05 CV 0543 |
| | ) | |
| Petitioner, | ) | Judge Donald C. Nugent |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **MARGARET BRADSHAW, WARDEN**, | ) | |
| | ) | |
| Respondent, | ) | Magistrate Judge James S. Gallas |
| | ) | |

Harry Broadus is a prisoner in state custody following convictions by a jury seated in Cuyahoga County for felonious assault with firearm specification, felonious assault with law enforcement officer specification, and having a weapon under disability. He was sentenced to serve ten years imprisonment. Broadus has exhausted his state appeals and is now in federal district court challenging his convictions raising three assignments of error. See *State v. Broadus*, 2003 WL 21470398, 2003 - Ohio - 3325 (Ohio App. 8 Dist.), *motion denied*, 100 Ohio St.3d 1485, 798 N.E.2d 1093 (Table 2003)(establishing exhaustion of his three grounds). As shall be explained, Broadus' arguments fail to establish that any constitutional rights were abridged at trial resulting in prejudice or a miscarriage of justice.

**Ground One:** Petitioner's rights to a fair trial and due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution, were violated when Petitioner was convicted without the State presenting sufficient evidence to establish each and every element of the crime.

2

Broadus challenges the state appellate court's factual findings, but in order to prevail he must sustain his contentions with clear and convincing evidence as required under §§2254(d)(2) and (e)(1). The basic facts as set forth in the state appellate court decision were as follows:

> {¶ 10} Alyssa Birge testified, while sitting in her apartment she heard two males yelling. When she looked out of her window, she saw a male raising his arm chasing another male; she then heard gunshots being fired, and called the police. She testified to the above at trial but could not identify the person firing the weapon.

> {¶ 11} Sergeant Paul Shaughnessy, a police officer with the Cuyahoga County Metropolitan Housing Authority, testified while on duty in the area of Cleveland's Jay Avenue and West 25th Street, he heard several gunshots and saw Harry Broadus chasing and firing a gun at a male later identified as Johnny Clyde White.

> {¶ 12} Sergeant Shaughnessy pursued Broadus and told him to drop the gun. Broadus refused then fired another shot at White. After firing at White, Broadus turned toward Shaughnessy and pointed the gun at him. Shaughnessy then fired several shots hitting Broadus in his buttocks. A .22 caliber revolver was found next to Broadus and was admitted into evidence.

> {¶ 13} Officer Wilmore Larry testified he interviewed Broadus in the hospital shortly after the shooting incident. Wilmore stated: "Mr. Broadus admitted he was involved in an altercation with a guy who punched him in the mouth. Mr. Broadus admitted having a gun. He admitted shooting the gun. He also admitted throwing the gun in the bushes. He also stated he had used cocaine before the shooting occurred." During the interview, he also said he was responsible for the shooting.

*State v. Broadus*, 2003 WL 21470398 at ¶¶10-13.

For the arguments that the state appellate court did review, the state appellate court applied the correct standard for reviewing the sufficiency of the evidence in the light most favorable to the

1:05 CV 0543                                   3

prosecution in accordance with *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d

560 (1979). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt

or innocence determination, but rather whether it made a *rational* decision to convict or acquit."

*Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 861, 122 L.Ed.2d 203 (1993). A decision to

convict is rational when guilt is established on review of all of the evidence in the light most

favorable to the prosecution. *Jackson*, 443 U.S. at 319. The state court decision did not specify that

it was applying *Jackson*, but the decision did state that it conducted its review of the evidence in a

light most favorable to the prosecution. See *State v. Broadus*, at ¶¶42-45. Accordingly, a deferential

standard of review applies which liberally states, "that a state court need not even be aware of all

precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts

them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003), quoting

*Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 352, 154 L.Ed.2d 263 (2000) (*per curiam*). Under the

sufficiency of the evidence standard of review set forth in *Jackson*, if the judgment is ***not*** supported

by "substantial and competent evidence" based on the record as a whole then the judgment must be

reversed.  *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003).


        For purposes of this habeas petition, Broadus has shifted his focus to challenge the

sufficiency of the felonious assault against Sergeant Shaughnessy on two arguments, which the state

appellate court did not acknowledge, based, first, on what he perceives to be inconsistent forensic

evidence and, secondly,  the fact that Sergeant Shaughnessy shot Broadus in the buttocks.(Traverse

at 7)  This first argument narrows the scope of his sufficiency challenge to the statement in

paragraph 12- that after being told to drop his gun Broadus fired *another* shot at White.  Broadus

1:05 CV 0543                                     4

claims he did not shoot at White after being told to drop the weapon. This argument based on the forensic evidence was presented both in the assignments of error and as a proposition of law to Ohio's Supreme Court. (Appellant's Brief at 3-5, 25, Respondent's Ex. C, and Memorandum in Support of Jurisdiction, at 2-3, 5-7, Respondent's Ex. G, Docket No. 13). The state appellate court, though, did not address this aspect of the arguments challenging the sufficiency of the evidence. In such circumstances the district court has no state court decision before it and must resolve the issue *de novo*. [1]

Broadus' argument begins with Detective Michael O'Malley's testimony that the gun attributed to Broadus was a six cylinder revolver containing three spent casings and three live bullets when found, establishing that the gun had been discharged no more than three times during the chase (TR. 491). Detective O'Malley further testified that the building on the west side of 25th Street situated between Bridge and Jay Avenues sustained three bullet defects, two bullet holes in the plate glass window and one "lead pellet fragment which was embedded in the window frame 43 inches from the ground." (TR. 463). It is Broadus' contention that this establishes that the three bullets were fired into the window located below the residence of Alyssa Birge at 1830 West 25th Street near Bridge Street, not Jay Street, where Broadus was observed and apprehended by Sergeant Shaughnessy (TR. 460-463). Broadus concludes that the shot that Sergeant Shaughnessy observed

---

[1] See *Howard v. Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1032 (2006); *Moldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005); *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *McKenzie v. Smith*, 326 F.3d 721, 726-27 (6th Cir. 2003), *cert. denied*, 540 U.S. 1158 (2004); *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001); and see *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003).

1:05 CV 0543                                        5

would have been the *fourth* shot from Broadus' revolver so the officer's story is contradicted by the

forensic evidence.

        This fourth shot, as Broadus argues, is essential to establish sufficient evidence for felonious

assault on Sergeant Shaughnessy because, as the state decision was keenly aware in regard to

another of Broadus' arguments, without this evidence the record only supports aggravated menacing:

> {¶ 42} "The act of pointing a deadly weapon at another, without additional
> evidence regarding the actor's intention, is insufficient evidence to convict
> a defendant of the offense of 'felonious assault' as defined by R.C.
> 2903.11(A)(2). While the pointing of a deadly weapon would undoubtedly
> justify a jury in concluding that the accused had committed the offense of
> 'aggravated menacing' as defined by R.C. 2903.21, the act of pointing a
> deadly weapon at another is essentially an equivocal act as it relates to the
> accused's intention to cause physical harm to another by use of that weapon."
> FN13
>
> FN13. *State v. Brooks* (1989), 44 Ohio St.3d 185, 542 N.E.2d 636.
>
> {¶ 43} This court in *State v. Sunderland*FN14 found sufficient evidence for
> a conviction of felonious assault where an off-duty police officer struggled
> with the defendant after the defendant pointed a shotgun at him and
> threatened to blow his head off.
>
> FN14. (Dec. 19, 1985), Cuyahoga App. No. 49950.
>
> [6]  {¶ 44} Here, as in *Sunderland*, we have additional evidence of Broadus'
> intention beyond merely pointing the weapon at Sergeant Shaughnessy.
> *Sergeant Shaughnessy testified he observed Broadus chasing White and
> shooting as he ran after him.* Broadus shortly thereafter pointed the gun at
> Shaughnessy. Broadus chased and shot at White. Afterwards, he turned his
> weapon on Officer Shaughnessy. These factors are more than sufficient to
> evidence Broadus' intent towards the officer.  (emphasis supplied)

1:05 CV 0543                                    6

{¶ 45} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.FN15 We conclude sufficient evidence was presented at trial. Accordingly, this assigned error is not well taken.

FN15. *State v. Seldon*, Cuyahoga App. No. 80129, 80130, 2002 Ohio 5825.

*State v. Broadus,* at ¶¶42-45.

It is Broadus' position post-trial that the forensic evidence demonstrated that Broadus had discharged all three shots before he encountered Officer Shaughnessy at the corner of 25th Street and Jay Avenue, making it impossible for the officer to have observed Broadus shoot White in his presence.  The state decision unfortunately did not address Broadus' argument based on the forensic evidence

Although review of this argument as *Jackson* instructs is *de novo*, the court must view the evidence in the light most favorable to the prosecution.  Sergeant Shaughnessy had testified while indicating the course of events on a diagram:

A.      He's standing, but he's pointing – Harry Broadus' back is towards me, yes.  Harry Broadus' back is towards me.  I am standing out here, he fires one round, I am yelling at him.  At that point he then turns to the left and starts coming around looking for me with his gun.  I am still yelling at him repeatedly.

Q.      And he's standing right about here (indicating)?

1:05 CV 0543                                    7

> A.  He's standing somewhere about here, or maybe right in here.  I think this is where he actually fell to the ground at, but he was more like here.  I am yelling at him to stop, and then I see him looking for me with his gun out.  I am yelling at him "Drop your gun, police, drop your gun."  He's looking right at me.
>
> Q.  This is after he just fired a shot?
>
> A.  Yes.  *He's already fired two rounds here*, and then he fired one round at Johnny White, who was down here and – (emphasis supplied).

(TR. 270-71).

The police sergeant  thus testified that two shots had been fired into the window below the Birge apartment near West 25th and Bridge Street and the final shot had been observed by the sergeant near Jay Street.

In discussing forensic evidence from Exhibit 33 at trial, Detective O'Malley testified:

> Okay.  Not depicted here, there is an address of 1830 West 25th Street.  There is a storefront, and we observed two defects in the plate glass window and they were 43 inches from the ground and five inches south of the right frame. . .  The second one was 53 inches from the ground and 28 inches south of that right frame.  This window measures seven feet six inches in height and thirty-six and a half in width, and in that area we located a lead pellet fragment which was embedded in the window frame 43 inches from the ground.  (TR. 463).

Later in testimony, the officer stated:

> . . .All we did was we noted the two defects in the window that we observed, and where we located the pellet fragment, which is State's Exhibit 32, Item E, and that would have been 43 inches from the ground, five inches just north of that little window here there is a defect, and then the fragment was located right in that location.  There is a second area defect also in the window here (indicating). . . .
>
> Well, these are consistent with the pellet holes.  We use "defect," but it's also consistent with the bullet hole.  (TR. 481-82).

1:05 CV 0543                                          8

Broadus' argument based on forensic evidence does not present a challenge to the sufficiency of the evidence, but the quality of the evidence.[2]  After all there was the testimony from Sergeant Shaughnessy that he saw Broadus take another shot at White. Placing the evidence in a light most favorable to the prosecution,  Broadus' argument at best presents conflicting evidence. Conflicting evidence leads to a credibility issue and credibility goes to the quality, not sufficiency of the evidence.  See *Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005).[3]  Accordingly, Broadus' conviction for felonious assault upon Sergeant Shaughnessy was supported by sufficient evidence.

Next, Broadus contends that his being shot in his buttocks proved that he was not threatening Sergeant Shaughnessy. Again the state appellate court did not specifically address this part of Broadus' assignments of error. Sergeant Shaughnessy had  testified that Broadus made eye contact when he crossed the street and saw the officer exiting his police cruiser.(TR. 272)  Then Broadus

---

[2]  Although resolution of this argument is not dependent upon analysis of  forensic evidence, it is clear that the detective was referring to discovering a pellet "fragment"... "right in that location" (TR. 481). A reasonable hypothesis would be that the bullet struck the window frame, fragmented, with part of it  embedding in the window frames and the remaining portion continuing on to become another "defect" in the glass window.  Thus, the damage of two "defects" could be attributed to two, rather than three bullets.  Looking at the evidence in this light, then the third bullet was the shot observed by Sergeant Shaughnessy just as he had testified.

[3]  As explained in *Tyler*:

> Tyler's insufficient evidence argument rests on an allegation involving witness credibility, which is clearly the province of the jury and not this court.  See *Herrera v. Collins*, 506 U.S. 390, 401-02, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (noting that in a habeas corpus action, a federal court should not make its own subjective determination of guilt or innocence); *see also Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (noting that attacks on witness credibility constitute a challenge to the quality, but not the sufficiency, of the government's evidence.)

*Tyler*, 416 F.3d at 505.

1:05 CV 0543                                        9

turned away to fire a round at White and then began to pivot to his left and as the sergeant testified,

"And he's looking for me" (TR. 272). Broadus contends that medical evidence indicates that

Broadus had been shot in the back  and fallen consistent with being in the position of having his

back to Sergeant Shaughnessy. The evidence which Broadus perceives as conflicting with the police

sergeant's testimony  raises an issue of credibility, not sufficiency. The police sergeant's testimony

provided sufficient evidence to support the felonious assault conviction.  Accordingly, following *de*

*novo* review of these two arguments that were not addressed in the state decision, there was

sufficient evidence to support Broadus' conviction of felonious assault against Sergeant

Shaughnessy.

> **Ground Two:**       Petitioner was denied his rights to a fair trial and due process of law, in violation of the Fifth and Fourteenth Amendments to prosecutor's misconduct during the trial.

The state appellate court noted the statements of the prosecutor were not objected to at trial

and hence were to be examined under the state's plain error rule.  See *State v. Broadus* at ¶20.[4]

Respondent argues that the prosecutorial misconduct claim was procedurally defaulted for failure

to object to the alleged improper statements made during closing arguments under Ohio's

---

[4]  The state appellate court held:
The prosecutor did  misstate the facts.  Broadus did not shoot at Shaughnessy, nor was he ever at point blank range from Shaughnessy.  However, we cannot find these misstatements to be plain error in light of the evidence pointing to the guilt of Broadus.  The eyewitness testimony of Sergeant Shaughnessy and Broadus' admission of his guilt to Officer Larry clearly shows the jury would have convicted him even if the error had not occurred.  Accordingly, this assigned error is not well taken.

*State v. Broadus*, at ¶21.

1:05 CV 0543                                10

contemporaneous objection rule, which has long been recognized as a basis for procedural default. See *Osborne v. Ohio*, 495 U.S. 103, 124 (1990).

Ohio's contemporaneous objection rule is an adequate and independent state ground and a defendant who fails to object waives review of the issue both in state review and on federal habeas corpus review. See *State v. Smith*, 89 Ohio St.3d 323, 731 N.E.2d 645 (2000); *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Williams v. Bagley*, 380 F.3d 932, 967-68 (6th Cir. 2004); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000).[5]  Subsequent plain error review by Ohio state courts does not waive this procedural default.  See *Keith*, 455 F.3d at 673; *Williams*, 380 F.3d at 968-69; *Seymour v. Walker*, 224 F.3d 542, 547 (6th Cir. 2000).  The subsequent unexplained denial of appeal from the Ohio Supreme Court is presumed to rest on the same procedural ground.  See *Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002); *Ylst v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).  Absent cause and prejudice or miscarriage of justice, the reviewing federal court cannot reach the merits of the claim. *Monzo v. Edwards*, 281 F.3d at 576; *Reed v. Farley*, 512 U.S. 339, 354-55, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994).

This leads to Broadus third ground of ineffective assistance of trial counsel.  Ineffective assistance of trial counsel can constitute "cause" to excuse procedural default. See *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Edwards v. Carpenter*, 529 U.S.

---

[5] Additionally, the Sixth Circuit has recently reiterated that in  "*Mason v. Mitchell*, most notably, the court began its prosecutorial-misconduct analysis by 'first not[ing] previous holding 'that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of cause and prejudice.' 320 F.3d 604, 635 (6th Cir. 2003) (quoting *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001))."  *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007).

1:05 CV 0543                                11

446, 451-52, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). Consequently, the implications are

twofold. First, Broadus must establish "cause" to excuse the procedure default allegedly due to

ineffective assistance of trial counsel in relation to the second ground, and second, he must establish

an unreasonable application of *Strickland v. Washington* by the state court with respect to the third

ground of either reasonable performance or lack of prejudice.

**Ground Three:**      Petitioner was denied the effective assistance of trial counsel, as guaranteed by the Sixth and Fourteenth to the United States Constitution, when counsel failed to argue reasonable doubt as to the charge of felonious assault on a peace officer and failed to object to the many instances of the prosecutor's misconduct.

To sustain a violation of the constitutionally guaranteed Sixth Amendment right to counsel,

Broadus must first show that counsel's performance was deficient, so that counsel was not

functioning as the "'counsel 'guaranteed the defendant by the Sixth Amendment,'" and secondly

Broadus "must show that the deficient performance prejudiced the defense;" so that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984); *Williams v. Taylor*, 529 U.S. 362, 390-91, 120 S.Ct. 1495, 146 L.Ed.2d 389

(2000).

The state appellate court found that trial counsel had not been ineffective explaining:

{¶ 22} In his second assignment of error Broadus argues he was denied his right to effective assistance of counsel where counsel failed to keep out testimony of drug use, to adequately argue reasonable doubt, or to object to instances of prosecutorial misconduct.

1:05 CV 0543                                      12

{¶ 23} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show trial counsel's performance fell below an objective standard of reasonableness and such performance resulted in undue prejudice.FN4

FN4. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 721 N.E.2d 52, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.
. . .

{¶ 26} Finally Broadus argues he received ineffective assistance of counsel where defense counsel failed to argue reasonable doubt as to his guilt in count one and should not have focused on police protocol in regard to shootings. It appears that defense counsel focused on police protocol in order to establish reasonable doubt of his guilt by attacking the way in which he was shot. This was done to determine the relative position of Shaughnessy to Broadus. This was an attempt to counter the state's theory that the shooting of Broadus was a reaction by Shaughnessy to Broadus' pointing the gun at him.

{¶ 27} Accordingly, we find no errors in counsel's trial strategy; furthermore, we find Broadus received a "fair trial and substantial justice was done." FN5 Assigned error two is not well taken.

FN5. *State v. Hester* (1976), 45 Ohio St.2d 71, 341 N.E.2d 304, paragraph 4 of the syllabus.

*State v. Broadus,* ¶¶22-23, 26-27.

The state court decision did refer to an appropriate decisional basis (*Strickland v. Washington*) from the Supreme Court which is sufficient to trigger a presumption that "state courts know and follow the law." *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002). "§2254(d) requires that 'state court decisions to be given the benefit of the doubt.'".

1:05 CV 0543                                          13

*Holland v. Jackson*, 542 U.S. 649, 654, 124 S.Ct. 2736, 2739, 159 L.Ed.2d 683 (2004), quoting

*Visciotti*, U.S. at 24, S.Ct. at 360. Accordingly, since the state decision acknowledged the correct

factors for adjudicating this claim, Broadus must show an "unreasonable application" of clearly

established Federal law. See *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162

L.Ed.2d 360 (2005); *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000);

*Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003).     The

unreasonable application of Supreme Court precedent must, however,  be "objectively"

unreasonable.  *Id.,* 529 U.S. at 409, 120 S.Ct. at 1521; *Wiggins, supra*, at 520-21.  When the state

court has rendered a decision, the federal reviewing court may not grant the writ in its "independent

review of the legal question."  *Lockyer v. Andrade*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155

L.Ed.2d 144 (2003).  When there has been an "unreasonable application" of clearly established

federal law then no deference is due to the state decision and the federal court is free to resolve the

claim independently. [6]  Consequently, it is not enough to convince a federal habeas court that in its

independent judgment the state court decision was incorrect.  Rather, Broadus  must show that the

state decision applied *Strickland* to the facts of the case in an objectively unreasonable manner.  See

---

[6] "Under AEDPA, a federal court may grant habeas relief, as relevant, only if the state court's "adjudication of [a] claim on the merits ... resulted in a decision that ... involved an unreasonable application" of the relevant law. When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires. See *Wiggins v. Smith,* 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (performing the analysis required under *Strickland's* second prong without deferring to the state court's decision because the state court's resolution of *Strickland's* first prong involved an unreasonable application of law); *id*., at 527-529, 123 S.Ct. 2527 (confirming that the state court's ultimate decision to reject the prisoner's ineffective-assistance-of-counsel claim was based on the first prong and not the second). See also *Williams, supra,* at 395-397, 120 S.Ct. 1495; *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam)* (indicating that § 2254 does not preclude relief if either "the reasoning [or] the result of the state-court decision contradicts [our cases]")."

*Panetti v. Quarterman,* -U.S. -, 127 S.Ct. 2842, 2858 -2859 (2007)

1:05 CV 0543                                    14

*Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Williams v. Taylor*, 529 U.S. 362, 409, 410, 120 S.Ct. 1495, 1521-22, 146 L.Ed.2d. 389 (2000).

Broadus raises two contentions challenging the state decision's conclusion. The first is based on the arguments raised in Broadus' challenge to the sufficiency of the evidence under the first ground. The second contention is that trial counsel failed to object to the instances of prosecutorial misconduct listed under the second ground. These contentions have a common nexus based on trial defense strategy.

Turning first to defense counsel's lack of objection to the State's inaccurate recollection of the evidence in closing argument. The state appellate court had found no plain error in regard to trial counsel's lack of objection to instances of alleged prosecutorial misconduct finding overwhelming evidence of guilt, hence no prejudice. See Note 4. With respect to trial counsel's effectiveness, the court found no error in counsel's strategy.

Under his argument for "cause" Broadus refers to *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996), pointing out that the Sixth Circuit has found, "the most compelling evidence of counsel's incompetence was the failure to object to very serious instances of prosecutorial misconduct." (Traverse at 14). This demonstrates, in Broadus' mind, that the functioning of the adversarial process at trial had been compromised, so effectively there was a denial of counsel. See *U.S. v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

1:05 CV 0543                                    15

> As [the Sixth Circuit] has explained, three types of cases can lead to a presumption
>
> of prejudice under *Cronic*:
>
> The first is the complete denial of counsel, in which the accused is denied the presence of counsel at a critical stage. The second is when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. The third is when counsel is placed in circumstances in which competent counsel very likely could not render assistance.
>
> *Mitchell v. Mason*, 325 F.3d 732, 742 (6th Cir.2003) (citations and quotation marks omitted).
>
> *Ivory v. Jackson,* - F.3d -, 2007 WL 3376643, at *8 -9 (6th Cir. 2007).

Broadus' argument falls under the second of the three categories, asserting that counsel failed to subject the government's case to meaningful adversary testing. "Such a 'constructive denial of counsel is limited to situations involving constitutional error of the first magnitude, which cannot be cured even if no prejudice is shown.'" *Id.,*( quoting *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir.2002)).


The state decision identified the instances of alleged prosecutorial misconduct that went without objection:

> {¶ 15} In his first assignment of error, Broadus argues he was denied his constitutional right to a fair trial due to prosecutorial misconduct during closing argument.

> {¶ 16} The first statement at issue concerns the prosecutor's inaccurate remark that Broadus fired his gun at Sergeant Shaughnessy. Shaughnessy never testified Broadus fired his gun at him.

> {¶ 17} The second statement concerns the prosecutor's inaccurate statement concerning the distance from which Sergeant Shaughnessy was when Broadus fired

1:05 CV 0543                                      16

the gun at him. Sergeant Shaughnessy testified Broadus was about 30 to 40 feet away. The prosecutor argued several times Broadus shot at Shaughnessy from point blank range.

{¶ 18} Broadus next argues the prosecutor inflamed the passion and prejudice of the jury by appealing to community abhorrence with respect to crime in general and this specific crime. The following was stated by the prosecutor: "You, in this case, have the power to stand up and say, as a community, as a Cuyahoga County resident and for the people, specifically the citizens of Ohio City, that we are not going to stand for this. * * * [t]his is your decision that you can make in terms of a resident of Cuyahoga County, and also the decision on behalf of the people that work there, that live there in Ohio City, based on what he did that night ."

{¶ 19} Finally, Broadus argues that the prosecutor implied White did not testify because he was scared of Broadus.

*State v. Broadus,* 2003 WL 21470398, at ¶¶ 15-19.

The state appellate court found these  to be non-prejudicial and respondent emphasizes in her argument that these inaccuracies would have been apparent to the jury.  Respondent maintains that  because the evidence of guilt was overwhelming the state court decision was not an "objectively unreasonable" application of *Strickland*'s second prong of prejudice due to  "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*,  466 U.S. at 687.

First, contrary to Broadus' contention, there was no "constructive denial" of counsel to sustain a presumption of prejudice under *Cronic*.  Contrary to the impression given by Broadus' arguments under the first ground, the defense strategy at trial was based on Broadus being an unarmed victim of police excessive use of force -  a man in the wrong place at the wrong time.

1:05 CV 0543                                          17

Defense counsel would not have objected because these prosecutorial misstatements would have bolstered the defense strategy. The prosecutor's exaggerations of the evidence played into Broadus' defense of a gross fabrication to cover up a serious breach of police protocol in the use of deadly force.

At trial it was the defense position that there was no gun (TR. 553-655). Detective O'Malley was examined on the failure to conduct fingerprinting tests or other tests to connect the gun retrieved from the crime scene to Broadus (TR. 533). Broadus challenged the veracity of the statement from a police officer that Broadus had admitted to owning the gun recovered at the crime scene. (TR. 533-34). Sergeant Wilmore Larry admitted that he had no transcription or any written statement to corroborate this statement attributed to Broadus while at the hospital (TR. 444-45). Second, Broadus utilized the incomplete forensic laboratory report for gunpowder testing pointing out at trial that the only positive evidence taken from Broadus body was from the area in his pants and shirt where he had been shot (TR. 536-37), and there was no positive evidence indicating any gunshot residue on his arms or hands (TR. 538). Third, Broadus emphasized what he believed to be the physical impossibility of Broadus being shot in the right buttocks from Sergeant Shaughnessy's position (TR. 654-55). Fourth, Broadus also emphasized the absence of White, and the negative implications of the State's not calling White to testify, who was the only other person present at the critical time (TR. 650). So there was a clear trial strategy. The additional fabrication of evidence by the prosecutor only served to aid Broadus' defense that the charges were to cover up a breach of protocol. Obviously, the government's case was put through meaningful adversarial testing and there is no presumption of prejudice under *Cronic*.

1:05 CV 0543                                                18

Secondly, returning to the two-prong test of counsel's effectiveness under *Strickland*, Broadus' argument that the charges were concocted to coverup police misconduct was not believed by the jury.  He offered no positive evidence, but simply argued that the prosecutor's evidence was not truthful.  Thus the case turned on credibility. The evidence of guilt was overwhelming, so Broadus cannot demonstrate the prejudice element of *Strickland*. There was no *per se* violation of the right to effective assistance of counsel under *Cronic*, and defense counsel's failure to object to the prosecutor's exaggeration of the evidence did not result in prejudice.  Accordingly, the state court decision was not an objectively unreasonable application of the rules from *Strickland v. Washington,* and it follows that Broadus has failed to establish "cause" to excuse the procedural default barring federal collateral review of the second ground.

Turning now to Broadus' first argument of ineffective assistance of defense for failing to argue reasonable doubt.  Defense counsel, obviously,  was not able to convince the jury to discredit the hospital bed statement that Broadus was responsible for the shooting.  Now Broadus wishes to substitute an entirely different defense based on admission of gun ownership, claiming that defense counsel was ineffective for not presenting this alternate and incompatible defense.

Broadus contends that trial defense counsel was ineffective for not raising his post-trial theory based on the claim of three shots being fired at the window under Ms. Birge's apartment.  It is interesting to note that Broadus does not disavow defense counsel's successful efforts at trial to prohibit the prosecutor from introducing evidence to show that the spent fragment found embedded in the window frame was from the gun recovered at the crime scene and attributed to Broadus.  (See

1:05 CV 0543                                                    19

TR. 473-75, 478-79, 480-81).  What Broadus now demands of the court is to accept the argument

that the fragment found embedded in the windowpane was fired from the gun recovered at the crime

scene after defense counsel had at trial prevented such a nexus being made.  There is simply nothing

to support the claim that the bullet fragment found embedded in the window frame was from the gun

attributed to Broadus.  Broadus does not claim that his trial strategy had been unsound, he simply

seeks to substitute a new strategy.


      The state appellate court found no error in defense counsel's trial strategy. See  *State v.*

*Broadus,*  ¶¶22-23, 26-27 (quoted previously in this report).  The law is well-settled that:

> [S]trategic choices made after thorough investigation of law and facts relevant to
> plausible options are virtually unchallengeable; and strategic choices made after less
> than complete investigation are reasonable precisely to the extent that reasonable
> professional judgments support the limitations on investigation. In other words,
> counsel has a duty to make reasonable investigations or to make a reasonable
> decision that makes particular investigations unnecessary. In any ineffectiveness
> case, a particular decision not to investigate must be directly assessed for
> reasonableness in all the circumstances, applying a heavy measure of deference to
> counsel's judgments." [*Strickland*], at 690-691, 104 S.Ct. 2052.

> *Wiggins v. Smith, supra,*  539 U.S. at 521-522, 123 S.Ct. at 2535.


      Broadus has not so much as alleged that the trial strategy used was based on unreasonable

investigation or on a professionally unreasonable decision. "[A] court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable professional assistance;

that is, defendant must overcome the presumption that, under the circumstances, the challenged

action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting  *Michel v.*

1:05 CV 0543                                          20

*Louisiana*, 350 U.S. 91 (1955)). The state appellate court found that the defense strategy was reasonable, and Broadus has not demonstrated that this finding was an "unreasonable" application of clearly established Federal law.

### *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, petitioner has not demonstrated that he is in custody pursuant to judgment of a State court which was the result of a decision that was contrary to or involved the unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable determination of the facts in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  There has been no demonstrated need for an evidentiary hearing.  It is recommended that the petitioner's application for habeas corpus be denied.

                                    s/James S. Gallas
                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985)

Dated: January 4, 2008